

| | |
|---|---|
| **Robert A. Mantel**<br>RMantel@crowell.com<br>(212) 590-5439 direct | Crowell & Moring LLP<br>Two Manhattan West<br>375 9th Avenue<br>New York, NY 10001<br>+1.212.223.4000 main<br>+1.212.223.4134 fax |

**VIA ECF**  February 28, 2024

Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *L.B. v. City of New York et al*, 1:23-CV-08501 (RPK) (JRC)

Your Honor:

  We represent Plaintiffs in the above-referenced matter. Pursuant to the Court's February 21, 2024 Order, we write in response to Defendants' request for a pre-motion conference on their proposed motion to dismiss portions of Plaintiffs' Complaint [Complaint at ECF No. 1 ("Compl."); Defendant's Letter Request at ECF No. 29 ("Letter")]. As set forth below, the Complaint adequately alleges Plaintiffs' Fourth and Fourteenth Amendment claims, and Defendants' bases for dismissing these claims misstate the law and Plaintiffs' allegations.

  **I. The Complaint Adequately Alleges Fourteenth Amendment Due Process Claims**

  The Complaint adequately alleges both substantive and procedural due process claims based on Defendants' unlawful intrusions on Plaintiffs' home and Kyle's body, and unlawful seizures of Kyle at his school, which interfered with L.B.'s ability to manage and care for her child. Compl. ¶¶195-211. Defendants wrongly assert that Plaintiffs' due process claims require allegations that Defendants interrupted L.B.'s custody of Kyle. Letter at 2. To the contrary, parents have a "constitutionally protected liberty interest in the care, custody and management of their children," *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999), and physical removal of a child "may not be necessary for the parents to claim that government conduct implicates" that liberty interest. *Phillips v. Cnty. Of Orange*, 894 F. Supp. 2d 345, 375-76 (S.D.N.Y. 2012). This Court has previously found that ACS's intrusion on a family's home and a child's body may constitute "strong evidence of a due process violation." *Doe ex rel. Doe v. Mattingly*, No. CIV.A. 06-CV-5761, 2006 WL 3498564, at *3 (E.D.N.Y. Nov. 6, 2006); *see also Calicchio v. Sachem Cent. Sch. Dist.*, No. 14-CV-5958 DRH SIL, 2015 WL 5944269, at *9 (E.D.N.Y. Oct. 13, 2015) (due process claim may proceed based on school taking a child out of class). Here, Plaintiffs likewise allege intrusive and unlawful searches and seizures, which caused Kyle to be diagnosed with anxiety, to refuse to attend school for fear of ACS harassment, and to insist on going everywhere with L.B, severely disrupting L.B's ability to manage and care for her son. Compl. ¶¶195-198. Defendants' conduct also interfered with L.B.'s ability to direct and manage Kyle's education, both in ACS removing him from class multiple times and in causing Kyle such anxiety that he became unable to attend school. *Id.* at ¶¶199-202.

February 28, 2024

As to Plaintiffs' substantive due process claim, Defendants are also wrong that the Complaint fails to allege sufficiently egregious conduct. Letter at 2. Again and again, after ACS knew that the anonymous reports made against L.B. were false and determined that Kyle was "well-cared for," *id.* at ¶¶67, 77, 101, 104, 111, Defendants falsely told L.B. that she was required to let ACS search her home, threatened legal action—including the implied threat of removing Kyle from her custody—if L.B. failed to comply, and coerced L.B. to consent to home searches and examinations of Kyle's body. *Id.* at ¶¶32, 49, 56, 61, 70, 85, 99. Even when L.B. refused ACS's demands to search her home, caseworkers unlawfully seized and interrogated eight-year-old Kyle at his school again and again without L.B.'s knowledge or consent, ultimately causing him to be diagnosed with anxiety. *Id.* at ¶¶177, 198. Defendants continued to unlawfully search and seize Plaintiffs <u>even after a Family Court judge admonished ACS that its conduct was traumatizing Kyle</u>, *id.* at ¶¶120-122, and after another Family Court judge told them that "ACS is being used as an instrument to harass L.B. and her family." *Id.* at ¶162. This egregious conduct constituted a deprivation of Plaintiffs' substantive due process.[1]

Finally, as to Plaintiffs' procedural due process claim, qualified immunity does not shield individual defendants from liability. L.B's right to be free from interference in the care and management of her son, absent a warrant, probable cause or exigent circumstances—and after the Family Court dismissed ACS's warrant applications and requests to see Kyle—is sufficiently well-established. *See Tenenbaum,* 193 F.3d at 602; *Mattingly*, 2006 WL 3498564 at *3.

## II. Plaintiffs Do Not Bring "Family Miranda" Claims

Defendants' argument that the individual defendants are immune from "failure to mirandize" claims misconstrues the Complaint. Letter at 3. Plaintiffs do not allege constitutional violations based on the failure to inform L.B. of her right to refuse ACS entry to her home. Rather, Defendants coerced consent to home searches, examinations of Kyle's body, and seizures of Kyle at school, through affirmative false statements that Plaintiffs were "required" to comply with ACS's demands. *Id.* at ¶¶ 32, 34, 48, 56, 61, 70, 85, 91, 98, 134, 144, 192. Qualified immunity does not protect the individual defendants from these claims.

## III. Plaintiffs' *Monell* Claim Against the City Defendants Should Proceed

The Complaint adequately states a claim for municipal "*Monell*" liability against the City Defendants by alleging facts demonstrating: (1) an official policy or custom that (2) caused Plaintiffs to be subjected to (3) a denial of a constitutional right. *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). *Monell* claims do not require an "express unconstitutional instruction" by the City. Letter at 3. Plaintiffs can demonstrate an official policy or custom by alleging "a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers"; or "a failure to properly train or supervise municipal employees that amounts to 'deliberate indifference to the rights of those which whom municipal employees will come into contact.'" *Acquino v. City of New York*, 1:16-cv-1577-GHW, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017). The Complaint alleges both.

---

[1] Defendants are also wrong that Plaintiffs fail to allege intentional interference with Plaintiffs' familial relationship. Letter at 2. When Ms. B denied ACS access to Kyle at home, Defendants unlawfully seized him at school without Ms. B's knowledge or consent—deliberate efforts to isolate Kyle in direct conflict with Ms. B's wishes. *See Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 47-48 (2d Cir. 2018) ("deliberate conduct implicates due process").

February 28, 2024

Plaintiffs allege that ACS's Casework Manual states caseworkers "must" visit homes, and encourages separate interviews of children at school (Compl. ¶ 207); and ACS's practice of falsely telling subjects of an investigation that they are required to let ACS into their homes and question their children, so as to coerce consent to these unlawful searches and seizures when ACS does not otherwise have the authority to conduct these searches and seizures. *Id.* at ¶¶ 208-209, 356-357. The Complaint details the use of this tactic by eight ACS employees against L.B., Kyle, other family members, and school officials more than a dozen times during six separate investigations. *Id.* at ¶¶ 48-49, 56, 61, 70, 85, 91, 98, 109, 112, 134, 144, 192. These allegations establish a persistent and widespread practice that constitutes an ACS custom or policy.

The Complaint also alleges the City Defendants' failure to properly train, specifically that ACS employees are instructed to coerce subjects of investigations to consent to home searches and interviews. *Id.* at ¶¶ 208-209, 357. City Defendants know to a "moral certainty" that its employees will confront situations in which they must seek permission to search homes and interview parents and children; these situations present ACS caseworkers with a difficult choice in how to obtain consent that training will make less difficult; and the wrong choice will frequently cause caseworkers to violate a parent's constitutional rights. *See Acquino*, 2017 WL 384354, at *5 (noting elements for failure to train claims).

Finally, the Court should reject Defendants' effort to downplay the widespread and egregious conduct detailed in the Complaint as nothing more than "misconduct by a small number of ACS personnel connected exclusively to investigating Plaintiffs." Letter at 3. This was not an isolated act, but pervasive unlawful conduct by numerous ACS employees in connection with multiple investigations over an almost three-year period, which viewed as a whole demonstrate ACS's unconstitutional practice of coercing consent to searches and seizures.

Accordingly, Defendants' request for leave to file a motion to dismiss should be denied.

Respectfully submitted,

*/s/ Robert A. Mantel*
Robert A. Mantel

| | |
|---|---|
| **CROWELL & MORING LLP** | **BROOKLYN DEFENDER SERVICES** |
| Joshua Sohn | Jessica Marcus |
| Robert A. Mantel | Lauren Shapiro |
| Daniella A. Schmidt | Lucas Marquez |
| Hinako Gojima | Kevin Siegel |
| Two Manhattan West | 177 Livingston St, 7th Floor |
| 375 Ninth Avenue | Brooklyn, NY 11201 |
| New York, NY 10001 | Tel: (347) 592-2518 |
| Tel: (212)590-5442 | jmarcus@bds.org |
| rmantel@crowell.com | |

*Counsel for Plaintiffs*