1:23-cv-8501 (RPK) (JRC)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

L.B., individually and on behalf of her minor child, Kyle, proceeding under a pseudonym,

                              Plaintiffs,

-against-

The City of New York; Jess Dannhauser, in his official capacity as Commissioner, Administration for Children's Services of the City of New York ("ACS"); Ariel Semper, Nadine Cenord, Bernadette Jean-Louis, Donna McFadden, Ana Costa, Taiesha Coleman, and Leydi Taveras, each individually and in their official capacity as ACS Child Protective Specialists,

                              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the City of New York
Attorney for Defendants
100 Church Street
New York, New York  10007

Of Counsel:  Daniel R. Perez
Tel:  (212) 386-0877
email: danipere@law.nyc.gov

DATE OF SERVICE: MAY 22, 2024

**Page**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

New York State Law Background ...................................................................................... 1

FACTS ALLEGED IN THE AC ........................................................................................... 3

STANDARD OF REVIEW ................................................................................................... 4

ARGUMENT ......................................................................................................................... 7

POINT I .................................................................................................................................. 7

    **PLAINTIFFS FAIL TO STATE A Section 1983 Substantive Due Process Claim** .........................................................................................7

POINT II .............................................................................................................................. 11

    **PLAINTIFFS FAIL TO STATE A Section 1983 Procedural Due Process Claim** ........................................................................................11

POINT III ............................................................................................................................. 12

    **Plaintiff Voluntarily Consented to the Searches and Seizures Alleged in Causes of Action 11 to 15** ...............................................12

POINT IV ............................................................................................................................. 14

    **Plaintiff has not pled facts sufficient to state a claim for municipal liability with respect to causes of action 1 to 16.** .......................14

CONCLUSION .................................................................................................................... 16

## PRELIMINARY STATEMENT

Plaintiff L.B., individually and on behalf of her minor son Plaintiff "Kyle", brings this bring this action against Defendants City of New York (the "City") and Jess Dannhauser, in his official capacity as Commissioner of the Administration for Children's Services of the City of New York ("ACS" and, collectively with the City, the "City Defendants") as well as Defendants Ariel Semper, Nadine Cenord, Bernadet Jean-Louis, Donna McFadden, Ana Costa, Taiesha Coleman, and Leydi Taveras individually and in their official capacity as ACS Child Protective Specialists (collectively, the "Individual Defendants"), alleging, pursuant to 42 U.S.C. § 1983 ("Section 1983"), violations of Plaintiffs' Fourth and Fourteenth Amendment rights.

Municipal Defendants now respectfully move to dismiss the Amended Complaint (the "AC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that, *inter alia*: (1) the AC fails to state a Section 1983 claim for a violation of Plaintiffs' substantive due process rights, Fourteenth Amendment violations, (2) the AC fails to state a Section 1983 claim for a violation of Plaintiffs' procedural due process rights, (3) Plaintiffs fail to state claims under Section 1983 in connection with the purported Fourth Amendment violations set forth in Causes of Action 11 to 15 of the AC, and (4) Plaintiffs' have not pled a claim for municipal liability with respect to Causes of Action 1 to 10.

Accordingly, Causes of Action 11-15 and 23-24 should be dismissed in their entirety with respect to all Defendants and Causes of Action 1 to 10 should dismissed with respect to the City.

## NEW YORK STATE LAW BACKGROUND

Section 424 of the New York Social Services Law ("N.Y. S.S.L.") as implemented by, *inter alia*, N.Y.C.R.R. 18 § 432 ("Part 432"), establishes certain mandatory procedures ACS must adhere to when upon receiving a report of potential child abuse or neglect (an "SCR") from

1

the State Central Register for Child Abuse and Maltreatment, a hotline operated by the New York State Department of Social Services. Generally, SCRs may be placed onto one of two "tracks," the typical "investigative track" governed by Part 432.2 or the Family Led Assessment Track, a more collaborative process for addressing reports of potential abuse or neglect governed by Part 432.13 available in specified cases. SCRs reflecting allegations of *inter alia*, sexual abuse, must be placed on the investigative track. *See* N.Y. S.S.L. § 427-a(3).

For cases on the investigative track, Part 432.2(b)(3)(i) obligates ACS to "conduct a must conduct a face-to-face contact or a telephone contact" with the "subject(s) of the report"[1] and/or "other persons named in the report," a category defined to include, *inter alia*, any children identified in an SCR. *See* N.Y.C.R.R. 18 § 432.1(3). Part 432.2 requires that, during the course of the investigation, ACS must conduct face to face interviews with the "subjects of the report and family members of such subjects, including any children named in the report." N.Y.C.R.R. 18 § 432.2(b)(3)(ii). Moreover, prior to completing the investigation, ACS must also include, *inter alia*, at least one home visit for purposes of assessing the environment of children named in the report as well as any other children residing in the home. N.Y.C.R.R. 18 § 432.2(b)(3)(iii)(a). If, at any point during the investigation, the subject of an SCR or a family member of the subject denies an ACS investigator access to any child residing at the home or if a child within the home cannot be located, the investigator must determine whether to seek family court intervention or take other emergency measures within 24 hours of the denial of access. *See* N.Y.C.R.R. 18 § 432.2(b)(3)(ii)(a).

---

[1] Part 432.1(d) defines "subject of the report" to include enumerated set of individuals alleged in an SCR report to be responsible for causing or allowing injury to a child. *See* N.Y.C.R.R. 18 § 432.1(d).

2

Before an ACS investigator may pursue family court intervention following a refusal of access to a child, the New York Family Court Act mandates that the ACS investigator must:

> [A]dvise the parent or other persons legally responsible for the child or children that, when denied sufficient access to the child or other children in the household, the child protective investigator may consider seeking an immediate court order to gain access to the child or children without further notice to the parent or other persons legally responsible.

N.Y. Fam. Ct. Act § 1034(2)(a)(1)(C); *see also* N.Y. S.S.L. § 424(6-b) (substantially identical in relevant part).

## FACTS ALLEGED IN THE AC

Plaintiffs' claims center on 22 allegedly unconstitutional searches and seizures conducted in connection with Defendants' investigation of "approximately fourteen anonymous" SCRs "against [Plaintiff L.B.]," dating from "approximately January 14, 2021 to August 20, 2023." *See* AC ¶ 22. State Central Register for Child Abuse and Maltreatment … a toll-free hotline operated by the New York State Department of Social Services" ("NYDSS"). *See* AC ¶ 22, 30.  referred to ACS by the "

The AC alleges that the initial report, dated January 14, 2021, alleged, *inter alia*, that L.B.:

- Had multiple children under the age of eighteen;
- Would leave her children unsupervised at home, resulting in injuries to children;
- Had a partner who resided with them and sexually abused her children;
- Knew of the sexual abuse, recorded the abuse on video, and sold the recorded material;
- Gave her children narcotics to get them to sleep;
- Kept, and allowed her partner to keep, machine guns in her home; and
- That L.B. and her partner used crack cocaine and heroin in the presence of L.B.'s children.

3

AC ¶ 42. The AC further alleges that the approximately thirteen additional reports against L.B. received following the January 14, 2021 report contained similar allegations. AC ¶ 31. Notably, the AC does not allege that any of the approximately fourteen reports referenced therein did were eligible for placement on the FLA track.

As discussed further below, the AC alleges that, in investigating these claims, "ACS caseworkers and investigators who visited [Plaintiffs'] home and Kyle's school" employed unduly aggressive tactics in investigating the 14 SCRs and that these aggressive tactics reflected an City Policy. AC ¶ 40. The allegedly improper tactics noted in the AC include purported threats to commence family court proceedings if L.B. and/or her family members did not provide ACS investigators with access to Kyle for questioning and/or permit them to inspect the Plaintiffs' home, among other purported misconduct. *See e.g.*, AC ¶¶ 51, 58, 87. Plaintiffs allege that these threats of to commence litigation proceedings resulted in L.B.'s and her family members' provision of involuntary consent to searches and seizures conducted by the Individual Defendants and other ACS personnel during the course of their investigation of the SCRs. *See generally,* AC ¶¶ 221-359.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the plaintiff's claims. *Id*. at 556. A well-pled complaint must therefore allege facts that reasonably lead the court to infer that the defendant is liable for the alleged harm beyond a "mere possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In doing so, a plaintiff must assert more than a cause of action or conclusory allegations; "naked assertion[s]" without "factual enhancement"

4

are insufficient to state a viable claim. *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, the Court need not "accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Schvimmer v. Randall*, 2022 U.S. Dist. LEXIS 177908, at *36 (E.D.N.Y. Sept. 29, 2022) (quotation omitted).

To state a claim for damages under Section 1983 against a defendant in their individual capacity, the Plaintiffs must plausibly allege "sufficient personal involvement in the alleged constitutional deprivations on the part of the defendants." *Zdziebloski v. Town of E. Greenbush*, 336 F. Supp. 2d 194, 201-02 (N.D.N.Y. 2004). *See also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Moreover, in connection with a motion to dismiss Section 1983 claims against individual defendants, the Court should also assess the individuals' potential qualified immunity from suit. *See Savino v. City of N.Y.*, 331 F.3d 63, 71 (2d Cir. 2003) (noting that "assertions of qualified immunity should be addressed as early as possible in the judicial process" because "qualified immunity is an immunity from suit—not merely an immunity from judgment").[2] "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In performing the qualified immunity analysis, the Court should consider "(1) whether the right in question was defined with

---

[2] "[I]t is well settled that child protective services workers are entitled to qualified immunity for their conduct during the course of abuse investigations." *Wilkinson v. Russell*, 182 F.3d 89, 99 (2d Cir. 1999).

5

'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Matusick v. Erie County Water Auth.*, 739 F.3d 51, 2014 WL 30694, at *23 (2d Cir. 2014) (quoting *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir. 1993) (internal quotation marks omitted)). Indeed, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In addition, a municipality such as the City "may be liable under [§ 1983] only if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (*citing Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). "[U]nder § 1983, local governments are responsible only for their *own* illegal acts . . . They are not vicariously liable under § 1983 for their employees' actions." *Id.* (internal citations omitted) (emphasis in original). "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691); *see also Deferio v. City of Syracuse*, 770 Fed. App'x 587, 590 (2d Cir. 2019) ("Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an 'affirmative link,' between the policy and the deprivation of his constitutional rights." (internal quotations and citations omitted) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985))).

Plaintiffs can establish a municipal policy in four ways: "(1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized

6

decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation resulting from policymakers' failure to train municipal employees." *Deferio v. City of Syracuse*, 770 Fed. App'x 587, 589–90 (2d Cir. 2019) (internal quotations and citations omitted). It is well-established that "[c]onclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation." *Weiss v. City of N.Y.*, 2020 U.S. Dist. LEXIS 60024, at *17 (E.D.N.Y. Mar. 31, 2020) (quoting *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 705–06 (S.D.N.Y. 1999) (collecting cases)); *see also Isaac v. City of N.Y.*, 2018 U.S. Dist. LEXIS 132995, at *50 (E.D.N.Y. Aug. 6, 2018) (quotation omitted) ("A complaint's mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

Significantly, the City's adherence to obligations mandated by state law does not reflect 'City policy' for purposes of *Monell* liability because "a municipality's 'decision' to fulfill a mandatory obligation does not constitute a 'choice[.]'" *Vives v. City of N.Y.*, 524 F.3d 346, 352 n.4 (2d Cir. 2008). Accordingly, to state a claim for municipal liability, Plaintiffs allege that the claimed constitutional violations arose from City conduct that was not dictated by state law.

## ARGUMENT

### POINT I

#### PLAINTIFFS FAIL TO STATE A SECTION 1983 SUBSTANTIVE DUE PROCESS CLAIM

The AC fails to adequately allege a violation of Plaintiffs' substantive due process rights under the Fourteenth Amendment such that Cause of Action 23 should be dismissed with respect to all Defendants. As a preliminary matter, the AC does not allege that Defendants'

alleged interference in Plaintiffs' familial relationship amounted to a cognizable infringement of Plaintiffs' right to family association.  The AC does not allege that Defendants deprived L.B. of custody over Kyle and, generally, "[w]here there is no actual loss of custody, no substantive due process claim can lie." *McCaul v. Ardsley Union Free Sch. Dist.,* 514 Fed. App'x 1, 3 (2d Cir. 2013). Indeed, the specific conduct alleged to have interfered with Plaintiffs' familial relationship—Defendants' allegedly improper inspections of Kyle's body for indications of abuse and the allegedly improper questioning of Kyle at school without L.B.'s consent, AC ¶ 353—did not deprive L.B. of custody for any period of time.

Moreover, to state a familial association claim pursuant to Section 1983, Plaintiffs must "also allege 'that [the challenged] state action was specifically intended to interfere with the family relationship.'" *Id.* (quoting *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 48 (2d Cir. 2018)). Plaintiffs have not met this requirement. The AC contains no allegations suggesting Defendants' claimed "misconduct was directed at the [Plaintiffs'] familial relationship itself," *Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 248 (N.D.N.Y. 2023), rather "than an incidental consequence of [D]efendants' actions." *Albert v. City of N.Y.*, No. 17-cv-3957-ARR-SMG, 2019 U.S. Dist. LEXIS 136428, at *11 (E.D.N.Y. Aug. 13, 2019).  The AC asserts that the conduct alleged that the conduct claimed to violate the Fourteenth Amendment occurred in connection with Defendants' "aggressive[] pursui[t] [of[ allegations of abuse or neglect" pursuant to a purported City policy mandating unduly coercive investigatory tactics. AC ¶ 40. The AC's allegations regarding Defendants' motives contradict that interference in Plaintiffs' familial relationship was the specific objective of Defendants' alleged misconduct rather than an incidental byproduct. *See Albert v. City of N.Y.*, No. 17-cv-3957-ARR-SMG, 2019 U.S. Dist. LEXIS 136428, at *12 (E.D.N.Y. Aug. 13, 2019) (noting allegation that police officers' separated plaintiffs' from their

8

decedent family member to promote a false narrative concerning the decedent's murder undercut claim that "the officers had the specific intent to interfere with their familial association rights").

Ultimately, Plaintiffs' substantive due process claims amount to a simple restyling of the allegations pled in support of their Fourth Amendment claims. "Because Plaintiff[s'] due process claims are merely duplicative of … claims … explicitly covered by the Fourth Amendment, [Plaintiffs] cannot bring an additional claim for violation of [their] right to substantive . . . due process under the Fourteenth Amendment." *Oudekerk v. Lehoisky*, No. 1:24-cv-0311 (AMN/TWD), 2024 U.S. Dist. LEXIS 71524, at *12 (N.D.N.Y. Apr. 19, 2024). Accordingly, Plaintiffs' substantive due process claim should be dismissed with respect to all Defendants.

A. **The Individual Defendants' Would be Entitled to Qualified Immunity to Any Substantive Due Process Claims**

The substantive due process claims should also be dismissed with respect to the Individual Defendants Finally, even if the AC adequately pled claims substantive due process claims against the Individual Defendants—it does not—the Individual Defendants' would be entitled to qualified immunity with respect to such claims. As discussed above, the Second Circuit has, at a minimum, strongly suggested in the context of child protective services cases that a substantive due process claim for interference with a familial relationship will fail absent a deprivation of custody. *See McCaul v. Ardsley Union Free Sch. Dist.*, 514 Fed. App'x 1, 3 (2d Cir. 2013). As a result, Plaintiffs cannot establish that the Individual Defendants' purported substantive due process violations contravened a "clearly established" right under the Fourteenth Amendment. It follows that the Plaintiffs' cannot surmount the Individual Defendants' qualified immunity with respect to their substantive due process claims. *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).

### B. The AC Fails to Plead Facts Sufficient to Support a Claim of Municipal Liability in Connection with Plaintiffs' Substantive Due Process Claims.

Plaintiffs' have also failed to adequately allege a basis for imposing *Monell* liability in connection with their substantive due process claims. Initially, Plaintiffs' failure to adequately allege a violation of their substantive due process rights (discussed above) precludes *Monell* liability on that claim. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

Moreover, even if Plaintiffs' had adequately pled a substantive due process violation, they have not plausibly alleged the existence of a City policy with a causal connection to the alleged substantive due process violations. *Arrington v. City of New York*, 628 F. App'x 46, 50 (2d Cir. 2015) (summary order) (affirming dismissal of Section 1983 claims against the City because plaintiff "did not plead any facts in his complaint … that would support a finding that these alleged violations resulted from a municipal policy"). Indeed, the AC does not plead facts linking any City policies, customs practices or training shortfalls that allegedly caused City personnel to engage in conduct intended specifically to target the family relationships of individuals named in SCR reports. *See, e.g.*, AC ¶¶ 362-370. Accordingly, Plaintiffs have failed to allege that any actions attributable to the City resulted in a violation of Plaintiffs' substantive due process rights. *See Kennedy v. Hirsch,* No. 21-3155, 2023 U.S. App. LEXIS 6502, at *8 (2d Cir. Mar. 20, 2023) (noting a familial association claim must be based on conduct "specifically intended to interfere with the family relationship" that "caused the plaintiff to be deprived of th[e] [Fourteenth Amendment] right" (quoting *Gorman v. Rensselaer Cnty.,* 910 F.3d 40, 47-48 (2d Cir. 2018) (internal quotation marks omitted)).

## POINT II

### PLAINTIFFS FAIL TO STATE A SECTION 1983 PROCEDURAL DUE PROCESS CLAIM

Plaintiffs fail to state a Section 1983 claim for the violation of Plaintiffs' procedural due process rights. "Plaintiff[s] cannot assert a claim based on [an] illegal search" or seizure "pursuant to the due process clause of the Fourteenth Amendment" because "[t]he Fourth Amendment covers constitutional claims of search and seizure…" *Mason v. Lax*, No. 3:20-CV-00039 (KAD), 2020 U.S. Dist. LEXIS 70799, at *5-6 (D. Conn. Apr. 22, 2020).  The AC does not allege any conduct that purportedly violated Plaintiffs' procedural due process rights aside from the allegedly improper searches and seizures underlying Plaintiffs' Fourth Amendment Claims. *See, e.g.*, AC ¶ 359 ("Defendants violated Plaintiffs' right to procedural due process by their pattern and practice of conducting coercive interrogations of Plaintiffs and seeking physical access to Kyle over Ms. B's objection and without a pre-deprivation hearing or a court order."). Accordingly, Plaintiffs' procedural due process claim should be dismissed with respect to all Defendants. *Mason v. Lax*, No. 3:20-CV-00039 (KAD), 2020 U.S. Dist. LEXIS 70799, at *5-6 (D. Conn. Apr. 22, 2020) (dismissing procedural due process claim "based upon the same factual basis as [plaintiff's] Fourth Amendment claim" as "duplicative of [his] Fourth Amendment claim"). Moreover, Plaintiffs' failure to adequately allege a cognizable procedural due process violation necessarily precludes the maintenance of a *Monell* claim predicated on the purported violation of Plaintiffs' procedural due process rights. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

Finally, even assuming Plaintiffs' procedural due process protections overlap with the rights afforded by the Fourth Amendment, the Individual Defendants would enjoy qualified immunity from suit in connection Plaintiffs' procedural due process claim because any such

rights under the Fourteenth Amendment would be insufficiently established. *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007).

## POINT III

### PLAINTIFF VOLUNTARILY CONSENTED TO THE SEARCHES AND SEIZURES ALLEGED IN CAUSES OF ACTION 11 TO 15

Plaintiffs fail to adequately plead Section 1983 claims for violations of Plaintiffs Fourth Amendment rights in connections with Causes of Action 1 to 16 of the AC. As discussed further below, the AC fails to plausibly allege that the respective Individual Defendants who conducted the searches and/or seizures failed to obtain valid consent. Moreover, the AC does not allege a sufficient causal link between these alleged violations of Plaintiffs' Fourth Amendment rights and a City policy to state a claim for municipal liability against the City pursuant to Section 1983. Accordingly, the Causes of Action 1-16 should be dismissed with respect to City Defendants and the respective Individual Defendants.

Plaintiffs claim that the alleged Fourth Amendment violations arose from 16 allegedly improper searches and/or seizures conducted by Defendants Semper, Cenord, Jean-Louis, and McFadden, respectively, between January 14, 2021 and February 6, 2022. The AC alleges that the searches and seizures occurred in connection with investigations of six SCRs alleging abuse (including sexual abuse) or neglect by L.B. and/or an alleged male romantic partner reported to reside at L.B.'s home. AC ¶ 221-316. Plaintiffs allege that each of the Sixteen Operations were conducted following the respective Individual Defendants' receipt of inadequate consent. Specifically, the AC alleges that L.B. and/or her adult family members only consented to the Operations based on the Individual Defendants' assertion that L.B. and/or her family members were "required" to grant them access to L.B.'s home and/or Kyle and made threatened to commence legal proceedings in the event L.B. or her family members refused to

comply to coerce their consent. The AC seeks to attribute the Individual Defendants' alleged violations of Plaintiffs' Fourth Amendment rights to City policies that have fostered and/or failed to address ACS investigators' unduly aggressive investigations of SCRs. AC ¶ 40. Plaintiffs' claims are unavailing.

L.B. does not claim that she or any of her family members refused to consent to Defendants' requests to conduct the sixteen searches and seizures discussed above. "One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); see also *Holeman v. City of New London*, 425 F.3d 184, 191 (2d Cir. 2005) ("One such exception [to the Fourth Amendment's protection against warrantless searches] is consent by a party whose property or person is to be searched."); *Durven D. v. Giuliani*, No. 98-CV-0523, 2000 U.S. Dist. LEXIS 11473, 2000 WL 1145425, at *5 (S.D.N.Y. Aug. 11, 2000) (finding no Fourth Amendment violation where during course of child abuse investigation plaintiff consented to the entry of police officers into his apartment). Moreover, it is well established that "[c]onsent [to a search] is voluntary when it is 'a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority.'" *United States v. Reyes*, No. 11-CR-58, 2012 U.S. Dist. LEXIS 14980, 2012 WL 363042, at *6 (S.D.N.Y. Feb. 1, 2012) (quoting *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir.1995)). L.B.'s claims that Defendants did not obtain valid consent are implausible in light of the totality of the allegations in the Complaint.

As a preliminary matter, LB.'s assertion that she believed she had no choice but to consent to the searches and/or seizures underpinning Causes of Action 11 to 15 are flatly contradicted by her own allegations. The AC alleges that, by no later than August 22, 2021, L.B.

13

"had heard from colleagues at her new employer that she could refuse to let ACS inside her apartment and did not have to cooperate with ACS." AC ¶ 87. Accordingly, as of that time, L.B. knew or was in a position to clarify any purported confusion she alleged felt with respect to her obligations to cooperate with ACS. Indeed, the AC acknowledges that on February 8, 2022, L.B. did, in fact, refuse Defendant Costa's request to enter Plaintiffs' residence. *See* AC ¶ 113. Accordingly, the Court should reject Plaintiffs' implausible and internally inconsistent claims that she did not provide voluntary consent to the searches conducted on August 22, 2021, August 30, 2021, September 3, 2021, September 22, 2021 and October 15, 2021. As L.B.'s voluntary consent to the search is fatal to her Fourth Amendment claims with respect to those searches and seizures, Causes of Action 11 to 15 should be dismissed in their entirety. *Schvimmer v. Randall*, 2022 U.S. Dist. LEXIS 177908, at *36 (E.D.N.Y. Sept. 29, 2022) (courts do not need to "accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").

### POINT IV

**PLAINTIFF HAS NOT PLED FACTS SUFFICIENT TO STATE A CLAIM FOR MUNICIPAL LIABILITY WITH RESPECT TO CAUSES OF ACTION 1 TO 16.**

Plaintiffs' claims with respect to Causes of Action 1 to 16 also fail because they do not sufficiently allege the existence of an unconstitutional municipal policy or custom, *Monell v. Dep't of Soc. Servs*, 436 U.S. 658 (1978), that caused the alleged injuries described in causes of Action 1 to 16. However, vague, speculative, or conclusory allegations about the existence of a policy or custom do not suffice to state a Section 1983 claim against a municipal defendant. *See Bradley v. City of New York,* No. 08-CV-1106, 2009 U.S. Dist. LEXIS 51532, at *8-9

14

(E.D.N.Y. June 18, 2009). Merely asserting that a municipality has a custom or policy "is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Id*. at *9; *see also Perez v. County of Westchester*, 83 F. Supp. 2d 435, 438-39 (S.D.N.Y. 2000) (dismissing municipal claims and rejecting the argument that plaintiff's complaint was "only required to contain a bare assertion that the challenged action was taken pursuant to a municipal policy or custom"), *aff'd*, 242 F.3d 367 (2d Cir. 2000). A plaintiff must provide some description of the nature of the policy or custom being alleged and cannot solely rely on boilerplate statements or bald assertions that a municipality has a custom or policy of unconstitutional behavior. *See Twombly*, 550 U.S. at 555.

In this case, the AC does not distinguish between the investigatory procedures over which the City had policymaking discretion and those mandated required by State law. Accordingly, because "a municipality's 'decision' to fulfill a mandatory obligation does not constitute a 'choice,'" *Vives v. City of N.Y.*, 524 F.3d 346, 352 n.4 (2d Cir. 2008), Plaintiffs' have failed to link policies and practices properly chargeable to the City (rather than the State) to the any of the purported constitutional violations set forth in Causes of Action 1 to 16.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court dismiss Causes of Action 11-15 and 23-24 in their entirety with respect to all Defendants and Causes of Action 1 to 10 with respect to the City..

Dated:     New York, New York
           May 22, 2024

                                              **HON. SYLVIA O. HINDS-RADIX**
                                              Corporation Counsel of the City of New York
                                              100 Church Street
                                              New York, NY 10007
                                              (212) 356-0877
                                              danipere@law.nyc.gov

                                 By:      s/     Daniel R. Perez
                                              Daniel R. Perez
                                              Assistant Corporation Counsel