**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------ x

L.B., individually and on behalf of her
minor child Kyle, proceeding under a
pseudonym,

                *Plaintiffs*,

        v.

The City of New York; Jess Dannhauser, in
his official capacity as Commissioner,
Administration for Children's Services of
the City of New York ("ACS"); Ariel
Semper, Nadine Cenord, Bernadet Jean-
Louis, Donna McFadden, Ana Costa,
Taiesha Coleman, and Leydi Taveras, each
individually and in their official capacity as
ACS Child Protective Specialists,

                *Defendants*.

------------------------------------------------------ X

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Civ. No. 1:23-cv-08501-RPK-JRC**

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................3

I.  Plaintiffs............................................................................................................................3

II.  Statutory Framework for Investigations of Child Abuse and Neglect................................3

III.  ACS's Policy or Custom of Using Coercive Tactics During the Course of Its Investigations of Child Abuse and Neglect .........................................................................................................4

IV.  Defendants' Use of Coercive Tactics in Relentless Investigations of Plaintiffs.........................5

   A.  Defendants begin using aggressive and intimidating tactics to coerce consent to search Plaintiffs' home and interview Plaintiffs (Causes of Action 1 to 10) ..........................6

   B.  Defendants continue to coerce entry to Plaintiffs' home after Ms. B hears she can decline to let them in (Causes of Action 11 to 16) ..................................................................7

   C.  Defendants' seizures of Kyle at school (Causes of Action 17 to 22) ...........................8

ARGUMENT ..................................................................................................................................9

I.  LEGAL STANDARD...........................................................................................................9

II.  PLAINTIFFS SUFFICIENTLY ALLEGE A SUBSTANTIVE DUE PROCESS CLAIM.............9

   A.  Plaintiffs need not allege a deprivation of custody to state a substantive due process claim I. .....................................................................................................................................10

   B.  Ms. B's interest in the care and management of her child is distinct from her right to familial association ................................................................................................................... 13

   C.  Plaintiffs' Substantive Due Process claims are distinct from Plaintiffs' Fourth Amendment claims................................................................................................................... 14

   D.  Qualified immunity does not apply ........................................................................... 15

   E.  Plaintiffs adequately plead municipal liability in connection with Defendants' substantive due process violations......................................................................................... 16

III.  PLAINTIFFS ADEQUATELY ALLEGE A PROCEDURAL DUE PROCESS CLAIM ......... 16

IV.  The Amended Complaint Adequately Alleges Violations of Plaintiffs' Fourth Amendment Rights in Causes of Action 11-15 ............................................................................................. 18

V.  Plaintiffs allege sufficient facts to support municipal liability for Causes of Action 1 to 16 .........21

CONCLUSION.............................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acquino v. City of N.Y.*,
 1:16-cv-1577- GHW, 2017 WL 384354 (S.D.N.Y. Jan. 25, 2017) ........................................22

*Albert v. City of N.Y.*,
 No. 17-cv-3957-ARR-SMG, 2019 WL 3804654 (E.D.N.Y. Aug. 13, 2019)...................13, 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................................9

*Bradley v. City of N.Y.*,
 08-CV-1106 (NGG), 2009 WL 1703237 (E.D.N.Y. June 18, 2009) ....................................24

*Bumper v. North Carolina*,
 391 U.S. 543 (1968)....................................................................................................18, 21

*Calicchio v. Sachem Cent. Sch. Dist.*,
 No. 14-CV-5958 DRH SIL, 2015 WL 5944269 (E.D.N.Y. Oct. 13, 2015) ...............10, 12, 15

*Doe ex rel. Doe v. Mattingly*,
 No. CIV.A. 06-CV-5761, 2006 WL 3498564 (E.D.N.Y. Nov. 6, 2006)....................12, 13, 15

*Jackson v. Peekskill City Sch. Dist.*,
 106 F. Supp. 3d 420 (S.D.N.Y. 2015)................................................................................12

*Johnson v. N.Y. State Police*,
 659 F. Supp. 3d 237 (N.D.N.Y. 2023) ..............................................................................14

*Mason v. Lax*,
 No. 3:20-CV-00039 (KAD), 2020 WL 1940667 (D. Conn. Apr. 22, 2020) ..........................15

*Meyer v. Nebraska*,
 262 U.S. 390 (1923)........................................................................................................11

*Monell v. Dep't of Soc. Servs.*,
 436 U.S. 658 (1978)........................................................................................................21

*Oudekerk v. Lehoisky*,
 No. 1:24-cv-0311, 2024 WL 1693850 (N.D.N.Y. Apr. 19, 2024) ........................................15

*Parkinson v. Town of Niskayuna*,
 No. 1:22-cv-70, 2023 WL 8574309 (N.D.N.Y. Dec. 11, 2023) ...........................................18

ii

*Perez v. Cnty. of Westchester*,
  83 F. Supp. 2d 435 (S.D.N.Y. 2000)...............................................................24

*Phillips v. Cnty. of Orange*,
  894 F. Supp. 2d 345 (S.D.N.Y. 2012) ........................................................ *passim*

*Pierce v. Soc'y of Sisters of the Holy Names of Jesus & Mary*,
  268 U.S. 510 (1925)...................................................................................11

*Reno v. Flores*,
  507 U.S. 292 (1993)...................................................................................10

*Roberts v. Jaycees*,
  468 U.S. 609 (1984)...................................................................................13

*Tenenbaum v. Williams*,
  193 F.3d 581 (2d Cir. 1999)...................................................................16, 17

*Troxel v. Granville*,
  530 U.S. 57 (2000) ..................................................................9, 10, 11, 13

*U.S. v. Garcia*,
  56 F.3d 418 (2d Cir. 1995)...........................................................................19

*U.S. v. Isiofia*,
  370 F.3d 226 (2d Cir. 2004)...............................................................19, 20, 21

*U.S. v. Reyes*,
  No. 11-cr-58 (RJH), 2012 WL 363042 (S.D.N.Y. Feb. 6, 2012) .............................19

*U.S. v. Rothman*,
  492 F.2d 1260 (9th Cir. 1973) ....................................................................19

*van Emrik v Chemung Cnty. Dep't of Soc. Servs.*,
  911 F.2d 863 (2d Cir. 1990)...............................................................11, 16, 17

*Vives v. City of N.Y.*,
  524 F.3d 346 (2d Cir. 2008)...............................................................22, 23, 24

*Wilkinson ex rel. Wilkinson v. Russell*,
  182 F.3d 89 (2d Cir. 1999)...........................................................................13

## Statutes

18 N.Y. Code of Rules and Regs. § 432. ..................................................3, 4, 20, 23

Family Court Act § 1034. .......................................................................4, 23

New York Social Services Law § 412 .................................................................4

New York Social Services Law § 424 ........................................................................3, 4

**Other Authorities**

Fourth Amendment ................................................................................................ *passim*

Fourteenth Amendment ......................................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) .................................................................1, 9

U.S. Constitution....................................................................................................9, 21

Plaintiffs L.B. ("Ms. B") and her minor child "Kyle" respectfully submit this memorandum of law in opposition to the partial motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants City of New York (the "City"); Jess Dannhauser, in his official capacity as Commissioner, Administration for Children's Services of the City of New York ("ACS"); and Ariel Semper, Nadine Cenord, Bernadet Jean-Louis, Donna McFadden, Ana Costa, Taiesha Coleman, and Leydi Taveras (the "Individual Defendants").

## PRELIMINARY STATEMENT

For almost three years, Defendants subjected Ms. B and Kyle to relentless, threatening, and coercive investigations of child abuse and neglect in connection with a series of anonymous reports Defendants knew, or should have known, to be false. As detailed in the Amended Complaint, Defendants coerced consent to search Ms. B's home and seize Kyle for body exams on more than a dozen occasions by falsely telling Ms. B that she was required to comply and threatening to take legal action against her if she refused. When Ms. B finally stood her ground and refused to comply with ACS's demands to search her home or see Kyle, Defendants began seizing and interrogating Kyle at his school against his will without Ms. B's knowledge or consent. Defendants continued to engage in these coercive tactics even after multiple Family Court judges admonished them and warned that they were traumatizing Kyle.

Based on Defendants' repeated unconstitutional conduct, the Amended Complaint plausibly alleges twenty-two causes of action under the Fourth Amendment for violations of Plaintiffs' rights to be free from unlawful searches and seizures, and two causes of action under the Fourteenth Amendment for violations of Ms. B's substantive and procedural due process rights based on Defendants' interference in her care, custody, and management of Kyle.

Additionally, the Amended Complaint adequately states a claim for municipal liability against the City based on the City's practice or custom of coercing consent to home searches and interrogations during investigations of child abuse and neglect absent a court order or exigent circumstances, and the City's failure to train ACS investigators as to what "voluntary" consent means and when they must obtain it, which caused the deprivations of Plaintiffs' rights under the Fourth and Fourteenth Amendments.

Defendants' partial motion to dismiss the Amended Complaint, which seeks to dismiss Causes of Action 1 to 10 with respect to the City, and Causes of Action 11 to 16 and 23 to 24 in their entirety, relies on misstatements of both the law and Plaintiffs' allegations.

First, as to Plaintiffs' substantive and procedural due process claims (Causes of Action 23 to 24), Defendants are wrong that Plaintiffs fail to state a claim. To state plausible substantive and procedural due process claims based on Defendants' interference in Ms. B's care, custody, and management of Kyle, Plaintiffs need not allege a deprivation of custody or intentional interference in the familial relationship. Further, these claims are not duplicative of Plaintiffs' Fourth Amendment claims, the liberty interest at stake is sufficiently well-established to overcome the Individual Defendants' qualified immunity, and Plaintiffs plausibly allege a link between these due process violations to a City policy or custom.

Second, as to the subset of Fourth Amendment claims Defendants seek to dismiss (Causes of Action 11 to 15), Defendants are wrong that they could not have coerced consent to certain searches and seizures at Plaintiffs' home because they came after Ms. B heard from co-workers that she could refuse ACS entry. The Amended Complaint sufficiently alleges that none of these searches and seizures were the product of "voluntary" consent, but of ACS's misrepresentations, threats, and shows of authority.

Finally, Defendants are wrong that Plaintiffs cannot state a claim for municipal liability against the City in connection with Causes of Action 1 to 16 because ACS and its investigators were merely following state law mandates. State law does not mandate that ACS coerce consent to searches and seizures during investigations of child abuse and neglect absent a court order or exigent circumstances in contravention of a subject's Fourth Amendment rights. That is the City's policy or custom, and it caused the deprivation of Plaintiffs' constitutional rights.

For the reasons explained herein, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety.

## FACTUAL BACKGROUND

### I. Plaintiffs

Plaintiff L.B. is the mother of Plaintiff child Kyle, who was born in 2013. Am. Compl. ¶ 9. Ms. B has been Kyle's primary caretaker and custodian since he was born, and they have lived in the same apartment in Brooklyn, New York, for over nine years. *Id*. Kyle attends a selective program for gifted children in a public elementary school in Brooklyn. *Id*. ¶ 10.

### II. Statutory Framework for Investigations of Child Abuse and Neglect

New York statutes and regulations provide a detailed blueprint for processing reports of alleged child abuse and neglect. Under New York Social Services Law ("SSL"), when a local child protective service agency, such as ACS, receives a report of alleged child abuse and neglect from the State Central Registry for Child Abuse and Maltreatment ("SCR")—a toll-free hotline that accepts reports from mandated reporters and members of the public who wish to report anonymously—the agency must initiate an investigation of the allegations within twenty-four hours to assess the environment and safety of the child. SSL § 424(6)(a); Am. Compl. ¶¶ 22-24. The regulations implementing the SSL ("Part 432") further provide that the agency must attempt

to conduct a home visit and face-to-face interviews with subjects of the report; however, if the parent does not consent to the home visit or interviews, the agency must assess whether it is necessary to seek a court order to obtain access to the home or conduct face-to-face interviews:

> The full child protective investigation must include the following activities:
>
> (a) face-to-face interviews with subjects of the report and family members of such subjects, including children named in the report. If at any time during an investigation the subject of the report or another family member refuses to allow a child protective service worker to enter the home and/or to observe or talk to any child in the household, or if a child in the household cannot be located, the child protective service worker must assess whether it is necessary to seek a court order to obtain access to the child or home or to compel production of the child or whether other emergency action must be taken.

18 N.Y. Code of Rules and Regs. ("NYCRR") § 432.2(b)(3)(ii). The New York Family Court Act ("FCA") sets forth clear procedures under which ACS can obtain court orders "at all hours" to authorize home entries, searches, and access to a child in the absence of parental consent. N.Y. FAM. CT. ACT § 1034(2)(a)-(f).

Within sixty days of the report, ACS must make a determination as to the safety of the child. SSL § 424(7). If the allegations in the SCR report are not supported by a preponderance of the evidence obtained during the investigation, the report will be closed as "unfounded." SSL §§ 412(6), 424(7). If the allegations of abuse or maltreatment are supported by a preponderance of the evidence, the report will be "indicated." SSL § 412(7).

### III.    ACS's Policy or Custom of Using Coercive Tactics During the Course of Its Investigations of Child Abuse and Neglect

Defendant City, acting through ACS, has a policy or custom of aggressively investigating subjects of child abuse and neglect investigations, regardless of whether there is a reasonable basis to pursue an investigation, by using coercive tactics to gain entry to subjects' homes, to interview parents and children, and to examine children's bodies. Am. Compl. ¶¶ 4, 212-217.

These coercive tactics include falsely telling parents, other household members, and children that they are required to permit ACS to enter homes and conduct interviews, and threatening legal action related to the removal of children and continued harassment if parents refuse.  *Id.* ¶ 215. In addition, these coercive tactics include interrogating children at school without parental notice or consent when access to those children at home has been denied, regardless of whether ACS knows the allegations under investigation are false.  *Id.*  ACS uses tactics to coerce consent to searches and interviews, rather than seek a court order for access to the home or child.  *Id.*

ACS's Division of Child Protection Casework Practice Requirements Manual (the "Casework Manual") states that caseworkers "must" visit the home and conduct face-to-face interviews, make "diligent efforts to gain entry to the home," and "[m]ake persistent attempts to gain cooperation from the family."  *Id.* ¶ 213.  Despite emphasizing the need for caseworkers to visit homes and interview parents and children, ACS has not adequately trained its caseworkers on when they must obtain consent to conduct these searches and interviews, the meaning of obtaining "voluntary" consent in accordance with parents' and children's constitutional rights, and when it is necessary to seek a court order prior to entering the home or seizing a child for questioning.  *Id.* ¶ 214.  To the contrary, ACS caseworkers are trained to use the tactics described above to coerce consent to home visits, interviews, and body exams.  *Id.* ¶¶ 216-17.

**IV.     Defendants' Use of Coercive Tactics in Relentless Investigations of Plaintiffs**

Between January 2021 and August 2023, the SCR received approximately fourteen anonymous reports of child abuse and neglect against Ms. B, all of which ACS eventually determined to be "unfounded."  *Id.* ¶ 30.  Each anonymous report contained similar false claims, including that Ms. B had additional minor children, that she worked in a strip club, that she lived with her children in a bar, and that she had minor daughters whom she sold to adults for sex.  *Id.*

¶ 31.  Early in the cycle of these reports, ACS determined that the allegations against Ms. B were false.  *Id.* ¶ 32.  During the first visit to Plaintiffs' home, which ACS conducted after NYPD officers stated the home was "clear," ACS investigators observed no issues with the home, confirmed that Ms. B had only one minor child, inspected Kyle's body and observed no injuries, and determined that Kyle was happy and well cared for.  *Id.* ¶¶ 46-50.

Nonetheless, over the course of the next three years, and consistent with ACS's policy or custom of using coercive tactics during the course of investigations, Defendants proceeded to search the family's home, question Kyle, and examine his body again and again without Plaintiffs' consent in connection with the false anonymous reports made against Ms. B  *Id.* ¶¶ 51-195.

### A.  Defendants begin using aggressive and intimidating tactics to coerce consent to search Plaintiffs' home and interview Plaintiffs (Causes of Action 1 to 10)

Between the afternoon of January 14, 2021 and April 27, 2021, Defendants—specifically Defendants Semper and Cenord—made at least seven unannounced visits to Plaintiffs' home. Am. Compl. ¶¶ 51, 58, 63, 67, 68, 71-72, 75.  During the first of these visits, Defendant Semper falsely told Ms. B that she was required to let them into her home and threatened to take legal action against her if she refused.  *Id.* ¶ 51.  Ms. B complied because she was intimidated and terrified, and believed she had no choice.  Am. Compl. ¶ 51.  Defendant Semper proceeded to search the home, question Kyle, and examine Kyle's body.  *Id.* ¶ 52.  Kyle was seven years old at the time.  *Id.* ¶ 34.  Defendant Semper then told Plaintiffs they had to go with ACS to a Child Advocacy Center ("CAC"), where Plaintiffs were again interrogated.  *Id.* ¶¶ 53-56.

Defendants repeated the same pattern of conduct during each subsequent visit to Ms. B's home.  Each time, Defendants repeated that Ms. B was required to permit ACS search the home

and see Kyle so as to coerce Ms. B's consent. *Id.* ¶¶ 58, 63, 67, 68, 71-72, 75. During many of these home visits, Defendants also insisted on examining Kyle's body. *Id.* ¶¶ 52, 64, 67, 73.

On May 12, 2021, Defendant Cenord visited Ms. B's home, but encountered Ms. B's adult daughter. *Id.* ¶ 78. Defendant Cenord told Ms. B's daughter that she had to let ACS inside and threatened to take action against Ms. B if her daughter did not comply. *Id.* ¶ 78. Ms. B's daughter let Ms. Cenord inside because she feared ACS would otherwise take Kyle away, and Ms. Cenord proceeded to question her and examine Kyle's body. *Id.* ¶ 78.

### B. Defendants continue to coerce entry to Plaintiffs' home after Ms. B hears she can decline to let them in (Causes of Action 11 to 16)

On August 22, 2021, following another false report to the SCR hotline, Defendant Jean-Louis visited Ms. B's home and demanded that Ms. B let her inside. *Id.* ¶ 86. Ms. B had recently heard from colleagues at her new employer, a day habilitation center, that she could refuse to let ACS inside, and Ms. B told Defendant Jean-Louis that she did not need to let ACS in. *Id.* ¶ 87. Defendant Jean-Louis then persisted to demand entry to Ms. B's home, stated that it was required, threatened to take Ms. B to court, and stated that the only way to make ACS stop visiting was to let them inside the home. *Id.* ¶ 87. Ms. B reluctantly complied because she was intimidated and, knowing the power ACS had to remove children from their parents, terrified by Defendant Jean-Louis's threats and the prospect of being separated from Kyle. *Id.* ¶ 87.

Over the course of less than one month, between August 30, 2021 and September 22, 2021, Defendants Jean-Louis and Semper visited Ms. B and demanded to search the home and see Kyle three more times. *Id.* ¶¶ 95, 97, 100. Ms. B complied with Defendants' requests only after they told her she was required to do so. *Id.* ¶ 95, 97, 100. During each of these visits, Defendants Jean-Louis and Semper also examined Kyle's body. *Id.* ¶ 95, 98, 102.

On October 15, 2021, after she did not find Plaintiffs at their apartment, Defendant Jean-Louis seized and questioned Kyle on the street. *Id.* ¶ 105.

At 4:00 a.m. on February 6, 2022, following yet another false report to the SCR hotline, Defendant McFadden visited Ms. B's home again, where Ms. B's cousin was babysitting Kyle. *Id.* ¶ 111. Defendant McFadden told Ms. B's cousin that ACS was required to search the home and see Kyle, and Ms. B's cousin complied because he believed he had no choice. *Id.* ¶ 112.

### C. Defendants' seizures of Kyle at school (Causes of Action 17 to 22)

The very next day, on February 7, 2022, Defendant Costa made another visit to Ms. B's home and demanded entry. *Id.* ¶ 114. Exhausted by ACS's relentless harassment, and believing that pleading her case before a judge may be the only way to stop ACS, Ms. B finally refused Defendant Costa's demand to search her home and see Kyle. *Id.* ¶ 115. Rather than seek a court order, the next day, Defendant Costa went to Kyle's school to interrogate and examine him out of his mother's presence and without her consent. *Id.* ¶¶ 116-119.

That same day, February 8, 2022, ACS filed a petition in Kings County Family Court for a warrant to enter Ms. B's home. *Id.* ¶ 120. After hearing about the history of ACS's interactions with Plaintiffs, the Family Court judge denied the application, expressed concern about the trauma ACS was inflicting on Kyle, and asked that ACS proceed more cautiously should there be additional investigations. *Id.* ¶¶ 122-27.

Defendants ignored the Family Court judge's requests. Between February 28, 2022 and September 12, 2023, following additional false anonymous allegations about Ms. B to the SCR hotline, Defendants seized and interrogated Kyle at his school on inappropriate topics without Ms. B's knowledge or consent five more times. *Id.* ¶¶ 136, 145-146, 151, 166, 194. Each time, Defendants removed Kyle from class against his will, disrupting his education. *Id.* ¶ 198. Defendants targeted Kyle at school even after two more Family Court judges denied further

warrant applications, and after Ms. B's counsel invoked Ms. B's right to have counsel present during all interactions with Defendants.  *Id.* ¶¶ 164-166, 170-171, 189-194.

As a result of Defendants' continued seizures of Kyle at his school, Kyle was diagnosed with anxiety and refused to go to school out of fear of seeing ACS again.  *Id.* ¶ 201.   Kyle is still terrified that ACS could remove him from class at any time and interrogate him.  *Id.* ¶ 205.

## ARGUMENT

### I.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint states a plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[T]he court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  *Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 358 (S.D.N.Y. 2012).

### II.  PLAINTIFFS SUFFICIENTLY ALLEGE A SUBSTANTIVE DUE PROCESS CLAIM

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Am. XIV.  "The Clause also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000).[1]  As the Supreme Court recognized in *Troxel*, "the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the

---

[1] Unless indicated otherwise, internal quotation marks and citations are omitted throughout.

fundamental liberty interests recognized by this Court." *Id.* When the government seeks to curtail such a fundamental liberty interest, it may do so only in a manner that is "narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

"To state a substantive due process claim, plaintiffs must allege (1) a valid liberty or property interest, and (2) defendants infringed on that interest in an arbitrary or irrational manner." *Calicchio v. Sachem Cent. Sch. Dist.*, No. 14-CV-5958 DRH SIL, 2015 WL 5944269, at *8 (E.D.N.Y. Oct. 13, 2015). Here, Plaintiffs adequately allege a substantive due process claim based on Defendants' unwarranted and excessive interference with Ms. B's liberty interest in the care, custody, and management of her son Kyle. Am. Compl. ¶¶ 195-211.

Defendants' stated bases for dismissing Plaintiffs' substantive due process claim fail on both the law and the facts. First, Plaintiffs need not allege a deprivation of custody. Second, Defendants conflate a parent's right to the care, custody and management of her child with the separate and distinct right to familial association. Third, Plaintiffs' substantive due process claim is not duplicative of Plaintiffs' search and seizure claims. Fourth, the Individual Defendants are not entitled to qualified immunity. And finally, Plaintiffs adequately plead a causal connection between the City's policy or custom of employing coercive tactics during investigations of child abuse and neglect with the alleged due process violations.

### A. Plaintiffs need not allege a deprivation of custody to state a substantive due process claim

The Amended Complaint adequately alleges that Defendants violated Ms. B's constitutionally protected liberty interest in the care, custody and management of Kyle through Defendants' aggressive and coercive conduct in the course of investigations of child abuse and neglect that Defendants knew to be baseless. Am. Compl ¶¶ 353-54. Defendants' relentless and egregious conduct, which continued after Family Court judges admonished ACS that it was

traumatizing Kyle and that ACS was "being used as an instrument to harass L.B. and her family," shocks the conscience, and was arbitrary and irrational. *Id.* ¶¶ 124-127,164.

Defendants are wrong that Plaintiffs' due process claims require allegations that Defendants interrupted Ms. B's custody of Kyle. Defs.' Mem. of Law in Support of Mot. to Dismiss ("Defs. Br.") at 7-8. To the contrary, the defining feature of parents' fundamental right to the care, custody, and management of their children is the right to direct their child's upbringing free from unnecessary government intrusion, regardless of whether that intrusion includes taking custody of the child. *See Pierce v. Soc'y of Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510 (1925) (holding the state cannot require parents to choose public over private school); *Meyer v. Nebraska*, 262 U.S. 390 (1923) (holding the state cannot interfere with parents' right to send child to German-language parochial school); *see also van Emrik v Chemung Cnty. Dep't of Soc. Servs.,* 911 F.2d 863, 867 (2d Cir. 1990) ("[T]he constitutional liberty interest of parents in the care, custody, and management of their child, though not beyond limitation, includes a significant decision-making role concerning medical procedures sought to be undertaken by state authority upon their children."). Recognizing that "natural bonds of affection lead parents to act in the best interests of their children", the law protects "the constitutional right of a custodial parent to make certain basic determinations for the child's welfare." *Troxel*, 530 U.S. at 66. Accordingly, physical removal of a child from custody "may not be necessary for the parents to claim that government conduct implicates a protected liberty interest." *Phillips*, 894 F. Supp. 2d at 375-76.

This Court has previously found that ACS's intrusion on a family's home and a child's body during the course of an investigation, while "an interference with the parent-child relationship less severe than removal," may constitute "strong evidence of a due process

violation." *Doe ex rel. Doe v. Mattingly*, No. CIV.A. 06-CV-5761, 2006 WL 3498564, at *3 (E.D.N.Y. Nov. 6, 2006) (finding a parent's liberty interest implicated when ACS caseworkers strip-searched a child during home visits). Courts have also found that a parent's liberty interest in the care, custody, and management of their child is implicated when the child is removed from class or school. *See Calicchio*, 2015 WL 5944269, at *9 (parent's liberty interest implicated when a school, through manipulative and coercive conduct, removed a child from class and forced him to perform work); *Jackson v. Peekskill City Sch. Dist.*, 106 F. Supp. 3d 420 (S.D.N.Y. 2015) (parents' liberty interest in raising daughter as they choose implicated when school counselor secretly removed her from class and school to obtain birth control).

Here, Defendants interfered with Ms. B's protected liberty interest in at least two ways. First, Defendants' repeated interrogations of Kyle at school, which included removing him from class and subjecting him to inappropriate questioning, without Ms. B's knowledge or consent after Ms. B specifically refused to permit ACS to interview or examine her child, disrupted Kyle's schooling and Ms. B's ability to direct and manage her child's education. Am Compl. ¶¶ 197-202, 205. Kyle, who was in a gifted program, used to love school, which was a safe place meant for education, but became terrified of going to school as a result of ACS's relentless seizures and interrogations. Am. Compl. ¶¶ 198-199, 205. After almost three years of constant ACS harassment, Kyle was diagnosed with anxiety, refused to go to school, and is still terrified that ACS will target him there. Am. Compl. ¶¶ 201-205

Second, Defendants' repeated body exams of Kyle, to which Ms. B did not voluntarily consent and which Ms. B could not prevent due to the coercive tactics ACS used to gain access to Kyle at home and at school, intruded on Kyle's bodily autonomy to such an extent that it

interfered with Ms. B's ability to care for her child. Am. Compl. ¶¶ 52, 62, 67, 68, 73, 78, 95, 98, 105, 205; *see Mattingly*, 2006 WL 3498564.

Plaintiffs sufficiently allege that Defendants' coercive and manipulative conduct during the course of their investigations of allegations of child abuse and neglect violated Ms. B's substantive due process rights, and the Court should deny Defendants' motion to dismiss Plaintiffs' substantive due process claim.

> **B.      Ms. B's interest in the care and management of her child is distinct from her right to familial association**

Substantive due process claims based on interference with a parent's care, custody, and management of her child are separate and distinct from due process claims based on interference with familial association. As discussed above, Plaintiffs assert the former. Conflating these two distinct bases for due process claims, Defendants mistakenly impute here a requirement for stating familial association claims, namely that Plaintiffs must allege intentional interference with the family relationship. Defs. Br. 8-9. Defendants are wrong.

As noted above, a parent's liberty interest in the care, custody, and management of her child is "perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court. *Troxel*, 530 U.S. at 65. And, as Defendants' own cited cases recognize, the right to intimate familial association is a separate and distinct liberty interest that relies on more recent jurisprudence. *See Albert v. City of N.Y.*, No. 17-cv-3957-ARR-SMG, 2019 WL 3804654, at *3 (E.D.N.Y. Aug. 13, 2019) (noting that the Supreme Court recognized the right to intimate familial association in *Roberts v. Jaycees*, 468 U.S. 609 (1984)); *see also Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103-04) (2d Cir. 1999) ("It has long been settled in this Circuit that a parent's interest in the custody of a child is a constitutionally protected liberty interest subject to due process protection . . . . ***In addition***, nearly thirty years ago, the Supreme Court

recognized that the integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment.") (emphasis added). Defendants cite no case in which intentional conduct directed at the family relationship was required to state a due process claim based on a parent's interest in the care, custody, and management of her child.[2] The cases Defendants cite, which concerned familial association claims specifically, are inapposite. Defs. Br. at 8; *see Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 248 (N.D.N.Y. 2023) (plaintiffs claiming familial relationship was interrupted when family member was killed by officer); *Albert*, 2019 WL 3804654, at *4 (daughter and partner of deceased mother claiming familial relationship was interrupted when mother was killed by police officer).

Plaintiffs adequately plead that Defendants violated Ms. B's substantive due process rights by interfering in her care, custody, and management of Kyle, and the Court should deny Defendants' motion to dismiss that claim.

### C. Plaintiffs' Substantive Due Process claims are distinct from Plaintiffs' Fourth Amendment claims

Misreading the Amended Complaint, Defendant argues incorrectly that Plaintiffs' substantive due process claims are duplicative of Plaintiffs' Fourth Amendment claims. Defs. Br. at 9. Ms. B's care, custody, and management due process claim is not based on Defendants' unconstitutional searches of her home (the bases for her Fourth Amendment claims), but rather on Defendants' relentless body exams of Kyle and seizures of Kyle at his school. Although Ms. B asserts Fourth Amendment claims on behalf of her minor child, any Fourth Amendment claim related to ACS's unlawful seizures of Kyle are Kyle's claims, not Ms. B's claims. Am. Compl.

---

[2] Regardless, the Amended Complaint sufficiently alleges intentional conduct by Defendants so as to state a separate familial association due process claim. When Ms. B denied Defendants access to Kyle, Defendants specifically targeted Kyle at his school without his Ms. B's knowledge or consent so as to drive a wedge between Ms. B and her child. Am. Compl. ¶¶ 36, 116. Since Defendants knew that the allegations against Ms. B were false, there was no legitimate reasons for these interrogations.

¶ 353-354. Since Ms. B's substantive due process claim is not based on the same allegations that support her Fourth Amendment claims, it is not duplicative and should not be dismissed. The cases Defendant cites in its brief, each of which concerned due process claims that relied on the same plaintiff's Fourth Amendment claims, are inapposite. *See Oudekerk v. Lehoisky*, No. 1:24-cv-0311 (AMN/TWD), 2024 WL 1693850, at *6-7 (N.D.N.Y. Apr. 19, 2024) (claims relied on alleged wrongdoings by an officer during plaintiff's arrest); *Mason v. Lax*, No. 3:20-CV-00039 (KAD), 2020 WL 1940667 (D. Conn. Apr. 22, 2020) (same).

**D.      Qualified immunity does not apply**

Qualified immunity does not protect the Individual Defendants from liability in their official capacities from Plaintiffs' substantive due process claim. Plaintiffs' allegations, "viewed in the light most favorable to" Plaintiffs, sufficiently show that the Individual Defendants' conduct violated Ms. B's substantive due process rights to the care, custody, and management of Kyle, and that right was "clearly established at the time of" Defendants' alleged misconduct. *Phillips*, 894 F. Supp. 2d at 384-85 (stating elements for qualified immunity defense).

Defendants argue that it is not sufficiently well-established that care, custody, and management due process claims do not require a deprivation of custody. Defs. Br. at 9. Defendants are wrong. As explained above, courts in this Circuit have recognized potential violations of this liberty interest where parents did not lose custody of their children. *See supra* 11-12. Moreover, courts have found that intrusions on a child's body and removing children from class absent parental consent or reasonable cause implicate parents' due process rights. *See Mattingly*, 2006 WL 3498564, at *3; *Calicchio*, 2015 WL 5944269.

### E.   Plaintiffs adequately plead municipal liability in connection with Defendants' substantive due process violations

Finally, Defendants are wrong that Plaintiffs fail to adequately plead a causal connection between a City policy or custom and the substantive due process violations alleged in the Amended Complaint.  Defs. Br. 10.  As described more fully below, the Amended Complaint sets forth detailed allegations concerning the City's policy or custom of using aggressive tactics and intimidation to coerce consent to home searches and interviews during investigations of child abuse and neglect, including interrogations of children at school absent parental consent and when ACS knows the child abuse and neglect allegations are false.  *Infra* 21-24.  This policy or custom, which caused Defendants to force Kyle to submit to body searches and to remove him from class for interrogations at school, is precisely what interfered in Ms. B's liberty interest in the care, custody, and management of her child.  Am. Compl. ¶ 212-15.

### III.   PLAINTIFFS ADEQUATELY ALLEGE A PROCEDURAL DUE PROCESS CLAIM

Defendants' bases for dismissing Plaintiffs' procedural due process claims similarly fail on the law and the facts.

In determining whether allegations in a complaint are sufficient to survive a motion to dismiss, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Phillips*, 894 F. Supp. 2d at 372.  The Second Circuit has held that a parent's liberty interest in the care, custody, and management of their child was implicated, and that procedural due process claims could proceed, where caseworkers investigating allegations of child abuse and neglect removed a child from school for a medical exam absent a court order or exigent circumstances.  *Tenenbaum v. Williams*, 193 F.3d 581, 594-95 (2d Cir. 1999); *see also van*

*Emrik,* 911 F.2d at 867 (due process violation where state officials obtained x-rays of child for investigative purposes without parental consent or a court order).

As in *Tenenbaum* and *van Emrik*, the liberty interest at stake here is Ms. B's interest in the care, custody, and management of her child. *See supra* 10-13. Plaintiffs have adequately alleged that Defendants infringed on that liberty interest without adequate process through its numerous body exams of Kyle and seizures of Kyle at school without a court order or exigent circumstances. Am. Compl. ¶¶ 30-36. Rather, Defendants seized and examined Kyle without a court order when they had already determined that the anonymous allegations against Ms. B were false, and even after a Family Court judge specifically denied Defendants' request for a warrant for Ms. B to bring Kyle to the CAC. Am. Compl. ¶¶ 66, 79, 106, 153, 169.

As discussed above, Defendant is wrong that Ms. B's procedural due process claim is duplicative of her Fourth Amendment claims because Ms. B's due process claim is based on the violation of her right to decide, or have a judge decide, whether to permit Defendant's body exams and interrogations of Kyle. *See supra* 14-15. Defendant is also wrong that qualified immunity applies to Ms. B's procedural due process claim against the Individual Defendants because the liberty at stake is not sufficiently well established. Defs. Br. 11-12. To the contrary, as noted above, Ms. B's liberty interest is in the care, custody, and management of her child, and that liberty interest is fundamental and sufficiently well established. *See supra* 15. The Amended Complaint adequately states a claim for Defendants' violation of Ms. B's procedural due process rights, and the Court should deny Defendant's motion to dismiss that claim.

**The Amended Complaint Adequately Alleges Violations of Plaintiffs'**
   **Fourth Amendment Rights in Causes of Action 11-15[3]**

As detailed in the Amended Complaint, Defendants never obtained valid consent from Ms. B or Kyle to conduct the unlawful home searches and seizures alleged in Causes of Action 11 to 15. Rather, Defendants used coercive tactics to intimidate and pressure Ms. B to grant them access to her home and child, rendering Ms. B's "consent" involuntary and those searches and seizures unlawful under the Fourth Amendment. Am Compl. ¶¶ 87-106. Defendants' argument that Ms. B voluntarily consented to these searches because she had previously heard from co-workers that she could deny ACS entry relies on misstatements of both the law and Plaintiffs' allegations. Defs. Br. 12-14.

Defendants do not dispute that ACS, like other child welfare agencies, is subject to the unreasonable search and seizure provisions of the Fourth Amendment. "The Fourth Amendment requires that state officials obtain a warrant based on probable cause before conducting a home search." *Phillips*, 894 F. Supp. 2d at 369. Although an exception exists where a party consents to a search, that consent must be voluntary, because "[w]here there is coercion, there cannot be consent." *Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) (holding that there was no valid consent to a search, and it was a constitutional error to admit evidence found during the search, where law enforcement justified the search based on consent they obtained only after representing that they had a search warrant); *see also Parkinson v. Town of Niskayuna*, No. 1:22-cv-70 (BKS/CFH), 2023 WL 8574309, at *7 (N.D.N.Y. Dec. 11, 2023) ("Because consent to search satisfies the Fourth Amendment only where that consent is voluntary and because consent to search is involuntary where police lie in claiming that they have a search warrant, Plaintiff has

---

[3] Although Defendants' brief suggests deficiencies in Causes of Action 1 to 16 of the Amended Complaint, Defs. Br. 12, Defendants seek to dismiss only Causes of Action 11 to 15 on the basis that there was voluntary consent on those occasions to ACS's searches and seizures.

plausibly alleged that Defendants . . . violated Plaintiff's Fourth Amendment right by searching his residence without a search warrant.").  As this Court noted in *United States v. Reyes*, which Defendants cite in support of their motion to dismiss, consent is not voluntary when it is "mere acquiescence in a show of authority."  No. 11-cr-58 (RJH), 2012 WL 363042, at *6 (S.D.N.Y. Feb. 6, 2012) (citing *U.S. v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995)).

Moreover, knowledge that one has the right to refuse consent does not establish that consent was voluntary.  *See U.S. v. Isiofia*, 370 F.3d 226, 232-33 (2d Cir. 2004) (affirming that defendant's consent to a home search was not voluntary, even though plaintiff was advised of his right to refuse consent in a consent-to-search form, where law enforcement used "coercive statements" and threatened to jail and deport him); *see also U.S. v. Rothman*, 492 F.2d 1260, 1264 (9th Cir. 1973) ("The knowledge of the right to refuse consent is no longer a necessary condition for valid consent, but neither is it necessarily a sufficient condition.").

In the context of investigations of child abuse and neglect specifically, this Court has found allegations that state officials told parents that a home visit was "required" as part of the investigation sufficient to establish that the parents' consent to a search was involuntary and sufficient to state a claim that the home inspection violated their Fourth Amendment right to be free from unreasonable searches.  *Phillips*, 894 F. Supp. 2d at 371-72.   The *Phillips* court noted that the relevant inquiry is "whether *the actions or words of Defendants* either implicitly or explicitly coerced the Parent Plaintiffs into consenting."  *Id.* at 371 (emphasis in original). Falsely telling subjects of a child abuse and neglect investigation that a search of their home was "required" was a coercive act that rendered "consent" to the search involuntary.  *Id.* at 372.

Just like the CPS investigators in *Phillips*, Defendants here coerced Ms. B and other members of her family into letting them search Ms. B's home and physically examine Kyle again

and again by falsely stating that it was "required" and simultaneously threatening legal action against her.  Am. Compl. ¶¶ 33-35, 51-52, 58, 63-64, 67-68, 72-73, 75, 78, 87, 95, 97-102, 105.

As to Causes of Action 11 to 15 of the Amended Complaint specifically, that Ms. B had heard from co-workers that she could refuse ACS entry into her home before the relevant searches and seizures does not establish that those searches and seizures were conducted with Ms. B's voluntary consent.  Defs. Br. 12-14.  To the contrary, Defendants' conduct on these occasions, as alleged in the Amended Complaint, demonstrate that Defendants used a show of authority to coerce Ms. B's acquiescence.

On August 22, 2021 (Cause of Action 11), when Defendant Jean-Louis demanded entry to Ms. B's home after yet another false report to the SCR hotline, Ms. B initially told Defendant Jean-Louis that Ms. B did not need to let her inside.  Am. Compl. ¶ 87.  At that point, Ms. B had effectively refused entry, and, as outlined in the applicable regulations, Defendants were obligated to "assess whether it is necessary to seek a court order to obtain access to the child or home or to compel production of the child or whether other emergency action must be taken." N.Y.C.R.R. 18 § 432.2 (b)(3)(ii)(a).  Rather than perform this assessment, Defendant Jean-Louis then doubled down and refuted Ms. B's assertion of her right to deny ACS entry.  She told Ms. B that the home search was "required," threatened to initiate legal action against Ms. B (which carried the implied threat of ACS taking away her child) and warned Ms. B that ACS would keep coming if she did not let them inside the home.  Am. Compl. ¶ 87.  Ms. B had merely heard from co-workers at a non-profit day habilitation program, not from figures of authority, that she did not need to let ACS into her home, and acquiesced to the search because she was intimidated by Defendant Jean-Louis's show of authority—precisely the kind of conduct courts have found to render "consent" involuntary.  *Id.*; s*ee Isiofia*, 370 F.3d at 232-33.

The unlawful searches and seizures conducted by Defendants Jean-Louis and Semper on August 30, 2021 (Cause of Action 12), September 3, 2021 (Cause of Action 13), September 22, 2021 (Cause of Action 14), and October 15, 2021 (Cause of Action 15) all followed Defendant Jean-Louis's statements contradicting what Ms. B had heard from her coworkers, and on each occasion Defendants Jean-Louis and Semper repeated that the home searches and body exams they demanded were required.  Am. Compl. ¶¶ 95, 97-98, 100-101, 105.  Plaintiffs' allegations are sufficient to establish that Plaintiffs did not voluntarily consent to these searches and seizures; rather, each was the product of Defendants' coercive conduct.  *See, e.g., Bumper*, 391 U.S. at 550; *Isiofia*, 370 F.3d at 232-33; *Phillips*, 894 F. Supp. 2d at 369.

## V.     Plaintiffs allege sufficient facts to support municipal liability for Causes of Action 1 to 16

Plaintiffs sufficiently allege two distinct bases for municipal liability against the City related to Plaintiffs' Fourth Amendment claims in Causes of Action 1 to 16:  (1) ACS's policy or custom of using coercive and intimidating tactics during investigations of child abuse and neglect to gain entry to subjects' homes, including false statements to subjects of investigations that they are required to permit ACS investigators to conduct home visits and interviews, even when ACS has no reason to believe a child is in danger; and (2) ACS's failure to train its investigators on when they must obtain valid consent to conduct these searches and interviews, what constitutes "voluntary" consent, and when it is necessary to seek a court order prior to entering the home or seizing a child for questioning.  Am. Compl. ¶¶ 212-20, 365-67.

Municipal defendants may be held liable under Section 1983 where an official policy or custom caused the deprivation of rights protected by the U.S. Constitution.  *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690-91 (1978).  Plaintiffs can demonstrate an official policy or custom by alleging "a practice so persistent and widespread that it constitutes a custom or usage and

implies the constructive knowledge of policymakers"; or "a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Acquino v. City of N.Y.*, 1:16-cv-1577- GHW, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017). The Amended Complaint, which details the coercive tactics used by eight ACS employees against Plaintiffs, other family members, and school officials more than a dozen times during six separate investigations, adequately alleges both. Am. Compl. ¶¶ 30-36.

Defendants argue that the Amended Complaint fails to "distinguish between the investigatory procedures over which the City had policymaking discretion and those mandated by State law," and since "a municipality's 'decision' to fulfill a mandatory obligation does not constitute a 'choice,'" the Amended Complaint fails to link the constitutional violations described in Causes of Action 1 to 16 to the City's policies and practices. Defs. Br. 14-15 (quoting *Vives v. City of N.Y.*, 524 F.3d 346 (2d Cir. 2008). Defendants, however, misrepresent the statutory structure underpinning ACS investigations of child abuse and neglect and ignore detailed allegations in the Amended Complaint as to the City's unconstitutional policies or customs that resulted in the deprivation of Plaintiffs' Fourth Amendment rights. The Court should reject the City's effort to blame the State for the City's own unconstitutional conduct.

As a threshold matter, Defendants do not explain how state law mandated Defendants' unconstitutional seizure of Plaintiffs when Defendants forced them to travel to a CAC for interrogations on January 14, 2021, as alleged in Cause of Action 2 of the Amended Complaint. Am. Compl. ¶¶ 53-56, 228. Nor do Defendants explain how state law mandated the body exams Defendants performed on Kyle during the home searches, which are the basis for Plaintiffs' Fourth Amendment seizure claims in Causes of Action 1, 5, 6 to 10, and 12 to 14. Am. Compl.

¶¶ 222, 246, 252, 258, 264, 270, 276, 288, 294, 300.  Since Defendants fail to address these seizure claims in their motion papers, Defendants' motion to dismiss municipal liability in connection with these claims should be denied outright.

As to the remainder of Causes of Action 1 to 16, state law in no way mandates that ACS use the coercive tactics detailed in the Amended Complaint to gain access to subjects' homes and children's bodies over and over again absent valid consent, exigent circumstances, or a court order.  Rather, as sufficiently alleged in the Amended Complaint, these are "investigatory procedures" that the City chooses to employ as a matter of custom or policy, and that result from the City's failure to properly train ACS investigators, not requirements dictated by the state. Am. Compl. ¶¶ 212-220.  The New York State regulations Defendants cite in their motion papers, Part 432, do not provide that ACS investigators must falsely tell parents that they are required to let ACS into their homes or must threaten legal action and the removal of children so as to intimidate parents into granting ACS access to the home and their children.  To the contrary, Part 432 specifically contemplates that ACS must "assess whether it is necessary to seek a court order" if "the subject of the report or another family member refuses to allow" ACS to enter the home.  NYCRR 18 § 432.2(b)(3)(ii)(a).  Moreover, the New York Family Court Act sets forth clear procedures under which ACS can seek a court order "at all hours" to authorize home entries, searches, and access to a child in the absence of parental consent.  N.Y. FAM. CT. ACT § 1034(2)(a)-(f).  In other words, state law makes clear that ACS has options:  conduct searches and interviews pursuant to valid consent or seek a court order when consent is denied.

Defendants' primary reliance on *Vives v. City of New York* is misplaced.[4]  524 F.3d 346 (2d Cir. 2008); Defs. Br. 14-15.  In *Vives*, the Second Circuit considered whether the City's

_____

[4] The other cases Defendants cite in their brief, each of which dismissed mere boilerplate allegations of municipal

policy of enforcing a state criminal harassment law, which the district court found to be unconstitutionally vague, could form the basis for municipal liability. 524 F.3d at 351. Remanding for further proceedings, the *Vives* court stated that the ultimate question was "whether a municipal policymaker has made a meaningful and conscious choice that caused a constitutional injury," noted that there could be no choice where a municipality merely fulfilled a mandatory obligation, and held that a "municipality cannot be held liable simply for choosing to enforce the entire Penal Law." *Id.* at 351, 353 n.4, 356. The Second Circuit noted, however, that one issue to be explored on remand was whether "the City made a conscious choice to enforce the statute in an unconstitutional manner." *Id.* at 357.

Here, the Fourth Amendment claims stated in Causes of Action 1 to 16 of the Amended Complaint are not based on the mere fact that Defendants sought to search Plaintiffs' home and interview Kyle during the course of child abuse and neglect investigations in an effort to fulfill ACS's investigatory obligations under state law, *but on the unconstitutional manner in which Defendants did so*. The City's custom and practice of employing coercive tactics during these investigations, and the City's failure to train ACS investigators on how to ensure their conduct comports with the need for voluntary consent or a court order, are meaningful and conscious choices that caused the constitutional violations alleged in Causes of Action 1 to 16 of the Amended Complaint. *See Vives*, 524 F.3d at 351.

---

liability, are inapposite. *See Bradley v. City of N.Y.*, 08-CV-1106 (NGG), 2009 WL 1703237, at *3-4 (E.D.N.Y. June 18, 2009) (alleging only that the City "fail[e]d to train, discipline, and supervise" employees and "fail[ed] to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior" of its employees); *Perez v. Cnty. of Westchester*, 83 F. Supp. 2d 435, 438 (S.D.N.Y. 2000) (alleging only that the "defendants, their agents, servants and employees, were acting under color of law and pursuant to county policy and custom"). As noted above, the Amended Complaint provides detailed allegations as to the City's custom of using certain tactics to coerce consent to home searches and interview, and the City's failure to train specifically related to when consent is required and what constitutes "voluntary" consent. Am. Compl. ¶¶ 212-220.

Plaintiffs sufficiently allege an official policy or custom that caused the deprivation of Plaintiffs' constitutional rights, and the Court should deny Defendants' motion to dismiss Plaintiffs' municipal liability claim with respect to Causes of Action 1 to 16.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Partial Motion to Dismiss in its entirety.

Respectfully submitted,

**CROWELL & MORING LLP**

Dated: June 5, 2024
New York, New York          By:      _/s/ Robert A. Mantel_
                                       Joshua Sohn
                                       Robert A. Mantel
                                       Daniella A. Schmidt
                                       Hinako Gojima
                                       Two Manhattan West
                                       375 Ninth Avenue
                                       New York, NY 10001
                                       Tel: (212) 590-5439
                                       jsohn@crowell.com
                                       rmantel@crowell.com
                                       dschmidt@crowell.com
                                       hgojima@crowell.com

**BROOKLYN DEFENDER SERVICES**

_/s/ Jessica Marcus_
Jessica Marcus
Lauren Shapiro
S. Lucas Marquez
Kevin Siegel
177 Livingston St, 7th Floor
Brooklyn, NY 11201
Tel: (347) 592-2518
jmarcus@bds.org
lshapiro@bds.org
slmarquez@bds.org
ksiegel@bds.org

_Attorneys for Plaintiffs_