UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| L.B., individually and on behalf of her minor child, Kyle, proceeding under a pseudonym,<br>　　　　　　*Plaintiffs*,<br>　　v.<br>The City of New York; Jess Dannhauser, in his official capacity as Commissioner, Administration for Children's Services of the City of New York ("ACS"); Ariel Semper, Nadine Cenord, Bernadet Jean-Louis, Donna McFadden, Ana Costa, Taiesha Coleman, and Leydi Taveras, each individually and in their official capacity as ACS Child Protective Specialists,<br>　　　　　　*Defendants*. | Civ. No. 1:23-cv-8501 (RPK) (JRC)<br><br>STIPULATION AND ORDER REGARDING THE DISCOVERY AND FORMAT OF ELECTRONICALLY STORED INFORMATION AND DOCUMENT PRODUCTION |

This Stipulation and [Proposed] Order shall govern the format and procedure for the production of electronically stored information ("ESI") and related document production in this Action.

### I. Purpose

This Stipulation and [Proposed] Order (the "Stipulation") will govern the discovery and format of ESI and any electronically stored or maintained information in this Action as a supplement to the Rules of Court, and any other applicable Orders and Rules.

### II. Definitions

    **A. "Confidential Information"** will have the same meaning as defined in the Joint Confidentiality Order, entered by the Court on January 14, 2025 (ECF No. 48) (the "Joint Confidentiality Order").

B. **"Highly Confidential Information"** will have the same meaning as defined in the Joint Confidentiality Order.

C. **"Document(s)"** shall mean documents as the term is used in Federal Rule of Civil Procedure 34(a)(1)(A).

D. **"ESI"** is an abbreviation of "electronically stored information" and shall have the same meaning and scope as it has in Federal Rule of Civil Procedure 34(a)(1)(A).

E. **"Load File"** is an electronic file that can assist in loading an electronic production set into a receiving Parties' document review platform.

F. **"OCR"** means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

G. **"Producing Party"** means the party or non-party producing documents in response to a discovery request propounded by another party.

III. <u>Custodians</u>

The parties have met and conferred or will meet and confer to discuss each party's identification of a reasonable and proportionate number of custodians and/or data sources for the purposes of this Action.

IV. <u>Search Methodology</u>

The parties agree to meet and confer in good faith, on an individual basis, to identify a reasonable and proportionate set of words, terms, and/or phrases (the "Search Terms") to define the scope of ESI each party will collect and review for potential production. The parties understand that different electronic indexing technologies require different search syntaxes; therefore, the parties may request modification of the Search Terms to conform to the syntax and logic of the

search tool being used, so long as any alteration is part of a good-faith effort to collect all relevant ESI.

ESI containing the agreed-to Search Terms shall be reviewed for potential production by the Producing Party. The parties recognize that the Producing Party is in the best position to determine how to search for, review, and produce its own ESI. The parties recognize and acknowledge that certain files initially captured through the use of the agreed-to Search Terms may be privileged, non-responsive, or irrelevant. The parties therefore agree that the files captured through the Search Terms are subject to a subsequent review by the Producing Party, prior to production, for privilege, responsiveness, confidentiality, and personally identifiable information ("PII") prior to production of responsive, non-privileged documents. In addition, the Producing Party may use any appropriate tool or technology to conduct its review, including technology assisted review, as long as the review is conducted in a defensible manner. Responsive documents fully withheld on the basis of privilege, including attorney work-product, shall be identified in a log. Documents withheld on the basis of non-responsiveness or irrelevancy need not be identified in a log.

### V. Search Terms and Custodians

The parties will meet and confer in good faith to reach agreement on the criteria to be used by the Producing Party.

### VI. Production Schedule

The parties agree that when a party propounds discovery requests, the parties agree to phase the production of ESI on a rolling basis. The Parties agree to substantially complete document production by May 2, 2025.

VII. **Production of ESI**

    A. **Native and Color Productions**. Except as specified in this section, the parties shall produce all documents and ESI as single-page, black-and-white Group IV Tagged Image File Format ("TIFF") image files, as described in Section IX.B below.

        1. Upon written request not unreasonably to be refused, the parties shall produce color images for a reasonable number of selected documents and ESI, specifying such images by production number. Documents and ESI produced in color shall be produced as JPEG images. Each color image file shall be named with the unique production number for the first page of the document or ESI in question followed by the file extension "JPG." A cross reference Opticon load file will be provided.

        2. For documents and ESI whose Native Format is MS Excel, MS PowerPoint, MS Access, QuickBooks, other database formats, multi-media files (audio or video), and any other file type that cannot be converted to TIFF, the original Native files shall be produced in addition to a single-page TIFF placeholder. The provisions of this section IX.A.2 notwithstanding, the parties shall not be required to produce in the first instance an original Native file of such documents and ESI if a claim of attorney-client privilege, attorney work product protection and/or any other privilege, protection or immunity from disclosure necessitates the application of redactions to such documents and ESI.

        3. "Native" files refer to electronic files in the same format in which they were originally collected from custodians or other sources. Native file productions shall include extracted text, metadata, and a single page TIFF image indicating that the associated file was produced in Native form. Each produced Native file shall be named with a unique production number (e.g., [Party Abbreviation]_SMT0000000 I .XLS) that is

assigned to that specific record in the production. Native files should be provided in a self-identified Natives directory. A "NativeLink" entry for each Native file should be included in the .DAT load file indicating the relative file path to each Native file on the production media. Any metadata fields for redacted documents that would reveal privileged information may be excluded.

4. To the extent any such Native files are used in any pretrial motion or proceeding, those files will be referred to by the production number assigned during processing.

B. **TIFF Productions**

1. **Image Production Standard**. Except as provided herein, the parties shall produce all non-database ESI and hard copy documents in TIFF format. All TIFF formatted documents will be single page, black and white, Group 4 TIFFs at 300 x 300 dpi resolution and 8 1/2 X 11-inch page size. If a party requests that a document be imaged at a higher resolution or different page size in order to adequately understand the contents of a specific document(s), the Producing Party shall make reasonable efforts to reproduce the document(s) in the different format.

   Each page should be branded with a production number and confidentiality designation, if any, on the face of the image. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). All TIFF images shall be produced in a sub-folder named "IMAGES," which shall contain additional sub-folders named "0001," "0002," etc. Each sub-folder shall contain no more than 3,000 images. Images from a single document shall not span across multiple sub-folders.

2. **Load Files**. The parties' document productions shall include Concordance- compatible Load Files, including a Concordance DAT file and an Opticon delimited file, that

indicate document breaks of the TIFF images and additional fields as identified in this Section B below. All Load and Cross-reference files shall be produced in a sub-folder named "DATA."

3. **File Name**. Each document image file shall be named with the unique production number of the corresponding page of the document in question followed by the file extension "TIF."

4. **Document Unitization**. If a document is more than one page, the unitization of the document and any attachments and/or notes shall be maintained as they existed in the original document.

5. **System Files**. Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed, or produced.

6. **Parent-Child Relationships**. Parent-child relationships (the association between an attachment and its parent document) should be preserved and appropriately reflected in the metadata. Production numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value production number when compared to its attachment(s). Document families (e.g., emails and their attachments) should be produced together. If a document within a responsive family is fully withheld due to privilege or non-responsiveness, a Bates-stamped single-page TIFF placeholder should be included. The placeholder should indicate either "Document Withheld for Privilege" or "Document Withheld for Non-Responsiveness."

7. **Metadata Fields and Processing**. Each of the metadata and coding fields that can be extracted from an electronic document shall be produced for that document. The parties

6

are not obligated to populate manually any of the fields that cannot be extracted from a document, with the exception of the following:

| Field | Description |
|---|---|
| BEGBATES | The bates label of the first page of the document |
| ENDBATES | The bates label of the last page of the document |
| BEGATTACH | The bates label of the first page of the parent document in a family of documents |
| ENDATTACH | The bates label of the last page of the last child document in a family of documents. |
| TITLE | Subject of e-mail or Title of Document |
| DOCDATE | Document Last Modified Date or E-mail sent date |
| CUSTODIAN | Individual in possession of the files. |
| TIMESENT | The time an email was sent |
| Sent Date | The Date Email was Sent |
| RECORD_TYPE | E-Mail, Attachment, E-DOC |
| FILE EXTENSION | File Extension |
| FILE NAME | Name of electronic file |
| PAGE_COUNT | Number of pages |
| AUTHOR | Author of Document or E-mail |
| RECIPIENT | Recipient of an E-mail |
| COPIES | Copies |
| BCC | Blind Copies |
| Hash | Unique MD5 Hash ID |

A party shall produce additional metadata, if any, for a reasonable number of specific documents upon the other party's request.

8. **Redactions**. In the event a document is redacted, the redaction will be marked by a box that covers the protected text with the privilege type (Attorney-Client Communication (ACC), Attorney Work Product (AWP), Doctor-Patient Privilege (DPP), etc.) listed on the redaction itself. The extracted text described above will not be delivered for that document; rather, in place of extracted text, OCR output will be delivered based on the redacted images, to the extent reasonably feasible. Redacted documents may be produced in TIFF format. The parties will not log any documents that have been

7

produced with privilege redactions provided that the privilege type is listed on the redaction itself and information providing sufficient context is left unredacted and/or provided in the DAT file.

C. **Searchable Text**. In addition to TIFF images and/or Native files, each production will include text files corresponding to the TIFF image or Native files described above.

　1. **Hard Copy Documents**. Hard copy documents shall be scanned using Optical Character Recognition ("OCR") technology and searchable ASCII text (or Unicode text if the text is in a language requiring characters outside of the ASCII character set) files shall be produced. Each file shall be named with the unique production number of the first page of the corresponding TIFF document followed by the extension "TXT."

　2. **Extracted Text or OCR Text for TIFF Images and Native Files**. To the extent practicable, each individual document based on an electronic file shall be accompanied by one corresponding document level text file with text that is extracted from the electronic file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a language requiring characters outside of the ASCII character set) and shall be named with the unique production number of the first page of the corresponding TIFF document followed by the extension "TXT." When there is no extractable text or when an Electronic Document has been redacted, OCR document level text will be provided. For the avoidance of doubt, redacted text need not be provided. The production of relevant ESI in searchable, full text format is limited to those forms of ESI that have text (in other words, any non-text formats [e.g., .wav and .jpeg] would not produce any corresponding text files).

　3. **All Extracted Text and OCR files shall be produced in a sub-folder named**

        **"TEXT."** The Concordance load file will contain a link to the extracted text or OCR text file if applicable. The text should not be included in the Concordance.DAT load file.

   D. **Confidentiality Designations**. If a party reduces Native files or other ESI designated "Confidential" or "Highly Confidential" to hardcopy form, it shall mark the hardcopy with the appropriate designation. The failure of a party to mark such hardcopy documents with the appropriate designation shall not affect such document's designation as "Confidential" or "Highly Confidential."

   E. **De-Duplication of Productions**. To the extent that exact duplicate documents reside within a party's ESI data set, the party may produce only a single copy of a responsive document. Exact duplicate shall mean documents containing identical content. For exact duplicate documents, the metadata described in Section III.B herein shall be produced for the produced copy. Deduplication shall be done at the document family level, such that where any exact duplicate documents have attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. Identical ESI may be deduplicated vertically (i.e., by custodian) and horizontally (i.e., globally across custodians).

**VIII.** <u>**Confidential Designations**</u>

    The terms of the separate stipulated Joint Confidentiality Order governing production and treatment of confidential information in this Action also govern all productions pursuant to this Protocol.

**IX.     Processing of Non-Party Documents**

Non-parties responding to discovery requests shall not be subject to this Stipulation. This provision shall not limit a party's right to request a particular form of production when serving document subpoenas on non-parties.

**X.      Subsequently Joined Parties.**

Parties joined to this action after the entry of this Stipulation shall presumptively be subject to its terms, however, subsequently joined parties may seek modification of this Stipulation either through further written agreement of all parties, or upon a showing of good cause, by application to the Court on notice to the other parties.

**XI.     Documents Protected from Discovery**

In accordance with Federal Rule of Evidence 502 (Attorney-Client Privilege and Work Product; Limitations on Waiver), the parties understand and stipulate that disclosure of Privileged Discovery Materials pursuant to this Stipulation, as well as any claw-back order or other applicable order, will not prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of attorney-client, work product or other applicable privilege or immunity. The mere production of privileged or work-product-protected documents in this Action as part of a mass production is not itself a waiver in this Action, or in any other federal or state proceeding.

The parties agree that communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

**XII.    Miscellaneous Provisions**

   A. This Stipulation is intended solely to address the format of document productions. Nothing in this Stipulation is intended to affect the rights of any party to object to any requests or demand for production. Nothing in this Stipulation shall constitute, or operate as, a waiver

of any rights of any party to object to, or to avoid, discovery or disclosure, in whole or in part, under the laws of the United States, the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Eastern District of New York, this Court's Individual Rules and Practices, or any other applicable law, rule, or order.

B. Nothing in this Stipulation establishes any agreement as to either the temporal or subject matter scope of discovery in the Action or as to the relevance or admissibility of any document. Nothing in this Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, protection or immunity from disclosure. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of hard-copy documents or ESI.

C. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Stipulation. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this Stipulation or if compliance with such material aspect would be unreasonable, such party shall inform the receiving party in writing as to why compliance with the Stipulation is impossible or unreasonable as soon as reasonably practicable. No party may seek relief from the Court concerning compliance with the Stipulation unless it has first conferred with the other party.

D. Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any party's discovery obligations.

E. Any application to the Court regarding this Stipulation shall be made pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for

11

  the Eastern District of New York, and this Court's Individual Rules and Practices.

 F. The Court will not retain jurisdiction after conclusion of the Action for enforcement of this Stipulation.

**XIII.** **<u>Modification</u>**

  This Stipulation may be modified by agreement of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED,** through Counsel of Record:

Dated: March 20, 2025

**CROWELL & MORING LLP**

*/s/ Robert Mantel*

Joshua Sohn
Robert Mantel
Emily Werkmann
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 223-4000
rmantel@crowell.com

**BROOKLYN DEFENDER SERVICES**
S. Lucas Marquez
Jessica Marcus
Kevin Seigel
177 Livingston St, 7th Floor
Brooklyn, NY 11201
(718) 254-0700
slmarquez@bds.org

*Counsel for Plaintiffs*

Dated: March 20, 2025

**NEW YORK CITY LAW DEPARTMENT**

*/s/ Daniel R. Perez*

Daniel R. Perez
Muriel Goode-Trufant
Corporation Counsel of
the City of New York
100 Church Street
New York, NY 10007
(212) 356-0877
danipere@law.nyc.gov

*Counsel for Defendants*

**SO ORDERED:**

S/ James R. Cho

JAMES R. CHO
United States Magistrate Judge

3/21/2025

Dated

13